IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ADVANCETEC, L.L.C., )
)
        Plaintiff, )
)
v. ) Civil Action No. 3:17-CV-201–HEH
)
WOHLSEN CONSTRUCTION )
COMPANY, )
)
        Defendant. )

MEMORANDUM OPINION
(Granting Defendant's Motion to Dismiss)

THIS MATTER is before the Court on Defendant Wohlsen Construction Company's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on March 31, 2017. (ECF No. 18.) Both parties filed memoranda supporting their respective positions. Oral argument followed on May 2, 2017.

For the reasons announced from the bench during the hearing and further amplified herein, the Court will grant the Motion. This case will be dismissed without prejudice.

I.   BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to it. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). At this stage, the Court's analysis is both informed and constrained by the

1

four corners of Plaintiff's Complaint. Viewed through this lens, the facts are as follows.

Plaintiff AdvanceTEC, L.L.C. ("Plaintiff" or "AdvanceTEC") is a Virginia limited liability company that specializes in cleanroom design and construction[1] as well as process tool installation and integration. (Compl. ¶ 2, ECF No. 1.) This action arises out of a construction bid process for a 220,000 +/- square foot pharmaceutical processing/manufacturing plant being built by Datwyler Pharma Packaging USA (the "Owner"). (Id. ¶ 9.)

In or around October 2016, Defendant Wohlsen Construction Company ("Defendant" or "Wohlsen"), a general commercial contractor serving the mid-Atlantic region (id. ¶ 3), invited Plaintiff "to submit a bid that included assisting the designated Engineer of Record with the design of the cleanroom and thereafter constructing the cleanroom." (Id. ¶ 12.) One month later, Defendant approached Plaintiff again to invite it "to participate directly in the final selection interview for award of the Project to Wohlsen, as Wohlsen's design-build specialty subcontractor for the Project." (Id. ¶ 13.)

On December 14, 2016, representatives from both Plaintiff and Defendant met to discuss the terms of a letter of intent, which would form the basis of their relationship. (Id. ¶ 15.) Throughout their negotiations, Plaintiff "made clear that it intended to reserve for itself all rights in the Instruments of Service [("IOS")[2] provided pursuant to any letter

---

[1] "A cleanroom is an environment that is controlled to International Organization for Standardization . . . standards for very low level of particulates and maintaining tight environmental conditions. Cleanrooms are used in the manufacture of such products as pharmaceuticals, electronic components, and semiconductors, as well as for advanced scientific research." (Compl. ¶ 2.)
[2] The IOS includes, but is not limited to, "design drawings, 3D BIM models, engineering calculations and loads, detailed estimates, value engineered solutions, detailed project sequence schedules of work for the project, OEM lists, and prequalified subcontractor lists." (Compl. ¶ 1.)

of intent entered into between the parties], including but not limited to any copyrights AdvanceTEC might have, except as specifically provided for in any written agreements." (*Id.* ¶ 16.)

On December 20, 2016, Wohlsen provided AdvanceTEC with a "proposed Subcontract for the cleanroom scope of work." (*Id.* ¶ 17.) Several weeks later, on January 5, 2017, Defendant provided Plaintiff with a proposed Letter of Intent for Subcontract (the "Draft LOI") in which it requested that Plaintiff perform certain design services directed toward reducing the overall cost of the cleanroom in advance of completing the Subcontract. (*Id.* ¶¶ 18, 19; *see also* Compl. Ex. A, ECF No. 1-1.) However, Plaintiff found the Draft LOI to be unacceptable. Specifically, AdvanceTEC objected to the fact that it defined the scope of work solely for "design-assist services" and not "design-build services." (Compl. ¶ 20.)

And so, later that day, representatives from Plaintiff emailed Defendant and provided comments and suggested revisions to the Draft LOI. (*Id.* ¶ 21; *see also* Compl. Ex. B, ECF No. 1-2.) In the email, Plaintiff reaffirmed that it had no intention of providing solely "design-assist services" and stated that it could not "accept an LOI that is not tied to *constructing* our scope of work for the Project." (Compl. Ex. B, at 2.) Plaintiff elaborated that "[t]his context is very important and applicable when we get down to the lower topic of ownership right to work products produced by AdvanceTEC." (*Id.*) Plaintiff concluded the January 5 email by proposing that the following terms be added so that the parties could clarify ownership rights in the event that their relationship ended prior to entering into a design-build subcontract:

3

> AdvanceTEC is agreeing to participate and perform design-assist, value engineering, and estimating services under this Letter of Intent until such time as a fully executed design-build subcontract is executed between Wohlsen Construction and AdvanceTEC. Until such time that AdvanceTEC is contracted, constructs, and is compensated for the scope of design-assist/build scope of work stated in AdvanceTEC's December 14, 2016 document, all work products shall remain the property of AdvanceTEC, unless such time if AdvanceTEC is found to be in contract breach. Upon completion and compensation of AdvanceTEC's work[,] a perpetual royalty free license will be granted to the Owner for the Owner's future use pertaining to the Project.

(*Id.* at 3.)

The next day, the parties signed an executed Letter of Intent (the "Executed LOI" or "LOI"), which included some, but not all, of Plaintiff's proposed revisions. (*See generally* Compl. Ex. C, ECF No. 1-3.) At the outset, the LOI affirmed that it was a fully integrated contract by stating that "[t]his Letter is the entire agreement between the parties until the parties execute a subcontract and any changes to the terms of this Letter must be made in writing based on mutual agreement of the parties." (*Id.* at 3.) The LOI continued by clarifying that Plaintiff's scope of services went beyond mere "design-assist services" by noting that the "scope of ('Service') [to be provided] is based on AdvanceTEC's attached 'Design-Assist / Build Scope of Work, dated December 14, 2016." (*Id.* at 2.)

Wohlsen went on to make clear that it "reserve[d] the right to stop the Services at any time." (*Id.* at 3.) The Executed LOI also stated that "[i]n the event that negotiations between Owner and [Defendant] conclude without an executed Contract, Subcontractor shall be compensated for the costs of the Services performed in accordance with the provisions of this Letter." (*Id.*) And, if such an event occurred, "all work product

4

produced by [Plaintiff] pursuant to this Letter shall be the property of, and provided to the Owner." (*Id.*)

The LOI contained no provision by which Defendant would acquire any rights in Plaintiff's work product created pursuant to the Executed LOI. (*See generally id.*) Significantly, the fully integrated contract also did not include Plaintiff's proposed terms regarding its retention of ownership rights until the completion of the project. (*See generally id.*) The LOI contained no provision to that effect.

Subsequent to signing the LOI, Plaintiff "provided the [IOS] described in the LOI and delivered the resulting work product to Wohlsen." (*Id.* ¶ 31.) At some point over the ensuing months, the parties' relationship soured, and Defendant notified Plaintiff by letter on February 23, 2017, that it was ending subcontract negotiations and terminating the LOI. (Compl. Ex. D, ECF No. 1-4.) Defendant requested that Plaintiff submit "all invoices for the costs of the Services AdvanceTEC performed . . . in accordance with the" LOI[3] and also asked Plaintiff to sign an "Acknowledgement of Termination of Letter of Intent and Final Release of Liens and Claims."[4] (*Id.* at 2.)

AdvanceTEC objected to the Acknowledgement, contending that Wohlsen was conditioning payment for Plaintiff's services on an extra-contractual requirement that Plaintiff assign all rights to its work product to Defendant.[5] (Compl. ¶ 33.) In a letter

---

[3] As of the date of oral argument, Plaintiff had not provided Defendant with an invoice for its services.
[4] Specifically, the letter stated: "Please submit all invoices for the costs of the Services AdvanceTEC performed through February 8, 2017 in accordance with the Letter of Intent, along with an executed copy of the enclosed Acknowledgement of Termination of Letter of Intent and Final Release of Liens and Claims." (Compl. Ex. D, at 2.)
[5] The Acknowledgment stated, in pertinent part: "As an inducement to [Defendant] making the requested payment, and contingent only upon receipt of the Final Payment Amount, [Plaintiff] agrees that all rights

5

dated February 28, 2017, Plaintiff informed Wohlsen it was "not willing to sign the Acknowledgement in its current form, and frankly, [it did] not see any benefit in attempting to negotiate a document that is so unreasonably one-sided." (Compl. Ex. E, at 2, ECF No. 1-5.)

In the letter, AdvanceTEC told Defendant that it had "no continuing right to use any of the Instruments of Service prepared by AdvanceTEC for or in connection with the Project." (*Id.*) In support of this assertion, Plaintiff cited Section 201(a) of the Copyright Act and stated that it was "the author and, therefore, the owner of the Instruments of Service." (*Id.* (citing 17 U.S.C. § 201(a).) Therefore, it demanded that "Wohlsen must immediately discontinue all use of the Instruments of Service, any derivative works prepared from them and any protected information contained in them." (*Id.*)

Plaintiff also affirmed that it "ha[d] not granted and does not grant Wohlsen any license to use the Instruments of Service. . . . [And], to the extent Wohlsen may claim that it has an implied license to use some or all of the Instruments of Service . . . AdvanceTEC hereby terminates any such license effective immediately." (*Id.*) Plaintiff concluded by noting that "[g]oing forward, any use by the Owner, Wohlsen, or the consultants or subcontractors of either of them, or anyone else acting on behalf of either of them, will constitute copyright infringement, and AdvanceTEC will take all action necessary to fully enforce its rights in its Instruments of Service." (*Id.*)

---

to the drawings, specifications and other documents ('Instruments of Service'), including those in electronic form, prepared by [Plaintiff] or its subcontractors or subconsultants (of any tier), including all statutory, common law and contractual rights of ownership to the Instruments of Service, shall transfer to the Contractor and may be used by the Contractor and the Owner in any way in connection with the design, construction, use, maintenance, expansion or promotion of the Project." (Compl. Ex. D, at 4 ¶ 4.)

On March 2, 2017, Defendant's counsel sent Plaintiff a letter responding to its objections. (*See* Compl. Ex. F, ECF No. 1-6.) The letter argued that the LOI "clearly contemplates that all work product created under the Letter of Intent would be assigned to, and become property of, either Wohlsen or [the Owner] . . . . To that end, the Letter of Intent contemplates that AdvanceTEC would transfer ownership of any created works to Wohlsen who would then, in turn, use the works in the performance of its duties." (*Id.* at 2.) Alternatively, Defendant asserted that, "[a]t a minimum, Wohlsen possesses an implied license to use the works created by AdvanceTEC pursuant to the Letter of Intent." (*Id.* at 3.)

Five days later, Plaintiff filed the two-count Complaint currently before this Court seeking a declaratory judgment and injunctive relief regarding two issues:

1. Whether Plaintiff is obligated to assign to Defendant the [Instruments of Service] Plaintiff created . . . .

2. Whether Defendant has an implied license to continue to use the IOS.

(Compl. ¶¶ 4(a)–(b).)

Defendant's Motion to Dismiss followed.

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

7

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570.

In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. ANALYSIS

Plaintiff has affirmatively stated that the relief it is seeking in this case "turns simply on the Court's interpretation of the terms of a simple written contract, the Executed LOI" (Mem. Opp. Mot. Dismiss 6, ECF No. 31) and that the rights it is attempting to enforce emanate solely from contract—and not copyright—law. (*Id.* at 2, 5 ("This case concerns contractual rights"; "Those rights emanate from contract law"; "Here, AdvanceTEC has brought a prototypical declaratory judgment action based on a written contract"; "The justiciable controversy here is one that is prototypical of a declaratory judgment action—the parties disagree over the meaning of a written contract, the Executed LOI").)

In its Motion to Dismiss, Defendant challenges the sufficiency of both Counts of Plaintiff's Complaint, arguing that there is no actual controversy with regard to Count I and that Count II is unsupported by the LOI. The Court will address each contention in turn.

### A. Count I: Assignment of Rights

"In Count I, AdvanceTEC seeks the Court's declaration of the parties' respective rights to resolve a dispute over whether AdvanceTEC is obligated under the Executed LOI to assign to Wohlsen all rights in the Instruments of Service. In other words, the Court will decide whether AdvanceTEC is contractually obligated to sign the Acknowledgement." (Mem. Opp. Mot. Dismiss 5–6.) Plaintiff contends that Defendant "has no right to condition payment on AdvanceTEC's acquiescence to new terms, including but not limited to the express grant of rights in Paragraph 4 of the Acknowledgement." (*Id.* at 6.) Plaintiff alleges that Defendant is holding it hostage "by demanding new terms it never would have agreed to" and that it "is in a position to obtain declaratory relief freeing it from captivity." (*Id.*)

In its Reply Brief in Support of its Motion to Dismiss, Wohlsen appears to agree with Plaintiff's position. Wohlsen expressly stated that it "does not require, and therefore does not seek, a written assignment of any ownership rights." (Reply Br. 4, ECF No. 35.) And it further affirmed that it "does not claim, require, assert, or demand a right to a written assignment by AdvanceTEC under the LOI and confirms it will not do so in the future." (*Id.* at 4 n.2.) While it concedes that "it requested extra-contractual actions, including a written confirmatory assignment" subsequent to the dissolution of the parties'

9

professional relationship, Defendant contends that it never conditioned payment upon Plaintiff acquiescing to those requests. (*Id.*) Therefore, Wohlsen concludes by asserting that there is no dispute for the Court to resolve in Count I.

"[A] federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g. federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201; *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994); *N. Jefferson Square Assocs. v. Va. Hous. Dev. Auth.*, 94 F. Supp. 2d 709, 714 (E.D. Va. 2000)).

Based on Defendant's affirmation that AdvanceTEC is not contractually obligated to sign the Acknowledgment—and that it will not condition Plaintiff's payment on it doing so in the future—the Court finds that there is no "actual controversy" between the parties with regard to Count I. Therefore, the Court concludes that it lacks subject-matter jurisdiction over this claim and that it must be dismissed. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised . . . at any stage in the litigation."); *Noble Sec., Inc. v. MIZ Eng'g*, 611 F. Supp. 2d 513, 550 n.21 (E.D. Va. 2009) ("[F]ederal courts, being of limited jurisdiction, must examine their subject matter jurisdiction throughout the pendency of every matter before them." (citation and quotation marks omitted)); *see also United*

*States v. Meacham*, 650 Fed. App'x 639, 640 (10th Cir. 2016) ("Without a live case or controversy throughout all stages of litigation, we lack subject matter jurisdiction.").

### B. Count II: Implied License in IOS

In Count II, Plaintiff asks the Court to enter a declaratory judgment holding that the LOI did not grant Wohlsen an implied license to use the IOS after the dissolution of the parties' relationship. (Mem. Opp. Mot. Dismiss 6–7.)

"The existence of an implied nonexclusive license . . . constitutes an affirmative defense to an allegation of copyright infringement." *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 377 Fed. App'x 303, 306 (4th Cir. 2010) (unpublished opinion) (quoting *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514 (4th Cir. 2002)). Therefore, a determination regarding whether Defendant has an implied license to continue to use the IOS subsequent to the termination of the LOI is necessarily predicated on AdvanceTEC possessing some underlying substantive right to bring a claim for copyright infringement. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256–57 (4th Cir. 1996) ("The Federal Declaratory Judgment Act provides that district courts may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is sought. . . . [A] declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.") (internal citations and quotation marks omitted).

However, Plaintiff conceded during oral argument that a claim for copyright

infringement—or any other issue arising out of copyright law—was not before the Court because it had not pleaded such an action. (*See also* Mem. Opp. Mot. Dismiss 2 ("This case concerns contractual rights"; "Those rights emanate from contract law").)

Due to Plaintiff's representation that "the purpose of the declaratory relief sought in this case is to avoid either party committing [a breach of the LOI] and to allow the parties to resume business with a complete understanding of their rights and obligations" (*id.* at 8), the Court finds that Plaintiff has insufficiently pleaded that there is "immediacy and reality to warrant issuance of a declaratory judgment" concerning a hypothetical affirmative defense to a hypothetical copyright infringement action. *Volvo Constr.*, 386 F.3d at 592 (internal quotation marks and citations omitted).

Therefore, Count II will be dismissed.

### C. Defendant's Continued Use of the IOS

The core relief that Plaintiff appears to be seeking is a determination of the parties' rights in the IOS subsequent to the termination of the LOI. Therefore, the sole question that remains before the Court is whether Wohlsen's continued use of the IOS constitutes a breach of the LOI.

AdvanceTEC's representations during oral argument and in its Response to Defendant's Motion to Dismiss support this conclusion. And framing the issue in this manner comports with Plaintiff's Complaint, where it asks the Court to enter an Order declaring that: (a) "The Executed LOI does not grant Wohlsen any right to continue to use the Instruments of Service or the information contained in them following termination of the Executed LOI"; and (b) "Neither Wohlsen nor any party that has

received any or all of the Instruments of Service from or through Wohlsen has any right to use the Instruments of Service or the information contained in them for any purpose." (Compl. ¶¶ 42(b)–(c).)

Consequently, the Court will assess whether it has the ability to grant the relief Plaintiff is seeking by examining the four corners of the fully integrated LOI, "which is the express and exclusive statement of the parties' agreement with respect to the Instruments of Service." (*Id.* ¶ 45; *see also id.* ¶ 42 ("The Executed LOI expressly states that it is the entire agreement between the parties.").)

"Virginia law [which governs the interpretation of the LOI] follows the 'plain meaning' rule, which dictates that the contract is construed as written, without adding terms that were not included by the parties." *Sutherland v. Gordon*, 294 Fed. App'x 754, 755 (4th Cir. 2008) (unpublished opinion) (internal quotation marks and citation omitted); *see also PBM Nutritionals, LLC v. Lexington Ins. Co.*, 724 S.E.2d 707, 714 (Va. 2012) ("It is a basic tenet of Virginia law that the courts, when interpreting a contract, 'construe it as written' and do 'not add terms the parties themselves did not include.'" (quoting *Landmark HHH, LLC v. Gi Hwa Park*, 277 Va. 50, 57 (2009)). Virginia courts "will not insert by construction, for the benefit of a party, a term not express in the contract." *Lansdowne Dev. Co., L.L.C. v. Xerox Realty Corp.*, 514 S.E.2d 157, 161 (1999).

It appears to be undisputed that the only reference in the LOI to any rights in the IOS is a lone provision granting conditional rights to the Owner in the event that it did not execute a contract with Defendant. (Compl. Ex. C, at 3 ("Should the Owner elect not

to execute a contract with Wohlsen, all work product produced by AdvanceTEC pursuant to this Letter shall be the property of, and provided to the Owner.").) However, the LOI is silent as to which party would convey those rights. Nevertheless, Plaintiff asserts that this reference in the LOI "demonstrates that the parties contemplated and addressed the single circumstance under which AdvanceTEC would be required to transfer rights in the Instruments of Service." (Reply Supp. Mot. Prelim. Inj. 11, ECF No. 28.) AdvanceTEC contends that "because the Executed LOI addresses [the Owner's] rights in the Instruments of Service, but says nothing about Wohlsen's rights in them, it precludes" Wohlsen's ability to use them subsequent to the termination of the LOI. (*Id.* ¶ 12.)

While the Court is aware that "under the principle of *expressio unius est exclusion alterius*, the omission of a particular covenant or term from a contract reduced to writing shows an intent to exclude it," *Bentley Funding Grp., L.L.C. v. KS&R Grp., L.L.C.*, 609 S.E.2d 49, 56 (Va. 2005) (citing *First Nat'l Bank v. Roy N. Ford Co.*, 252 S.E.2d 354, 357 (Va. 1979)), Plaintiff's position that merely referencing a conditional transfer of rights to a third party implies a reservation of its own rights and a proscription against Defendant's further use of the IOS is untenable.

The lone provision of the LOI that referenced a hypothetical transfer of rights made no mention of the rights of the parties to the contract itself. Though Plaintiff may have made clear that it "intended that Wohlsen's rights to use the [IOS] would terminate if AdvanceTEC was not selected as the subcontractor" (Compl. ¶ 30) and that it desired to retain the rights to the IOS until construction was complete (*id.* ¶ 16), the Court finds

that there is nothing in the Executed LOI to demonstrate that those intentions were ever perfected in the resulting document.

Consequently, the Court concludes that it lacks any textual basis to grant Plaintiff's requested relief because there is no provision in the LOI that would place Wohlsen in breach of the contract should it continue to use the IOS. The Court cannot impose a restriction requiring Defendant to comply with a new contractual term not agreed to by the parties. *See Lansdowne Dev. Co.*, 514 S.E.2d at 161.

## IV. CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss will be GRANTED. (ECF No. 18.) Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief will be DISMISSED WITHOUT PREJUDICE. (ECF No. 1.)

Plaintiff is granted twenty-one (21) days from the date of entry hereof to amplify the factual and legal basis on which its claims rest and file an amended complaint, should it deem it prudent to do so. This case will remain open until then.

An appropriate Order will accompany this Memorandum Opinion.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion to all counsel of record.

/s/
Henry E. Hudson
United States District Judge

Date: May 9 2017
Richmond, VA